## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | |
|---|---|
| **DAVID GRANADO, Individually and as Next Friend of Seth Granado, a Minor**<br>*Plaintiff*<br><br>vs.<br><br>**EL PASO INDEPENDENT SCHOOL, DISTRICT, COACH EUGENE COSTELLO, COACH EBBERNOEL RUVALCAVA, and JOHN DOES 1-5**<br>*Defendant(s).* | **Case No.:**<br><br>**COMPLAINT AND JURY DEMAND** |

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Plaintiff David Granado, individually and as next friend of his minor son, Seth Granado (hereinafter "Plaintiff"), by and through his undersigned counsel, and files this Complaint against Defendants Andress High School, El Paso Independent School District, Coach Eugene Costello, Coach Ebbernoel Ruvalcava, and John Does 1-5, and for cause of action would respectfully show the Court the following:

I. **PARTIES**

1. **Plaintiff:** David Granado is an individual residing in El Paso County, Texas. He is the father and legal guardian of Seth Granado ("SG"), a minor, who is also a resident of El Paso County, Texas.
2. **Defendant Andress High School** is a public high school located in El Paso, Texas, and is part of the El Paso Independent School District (EPISD). Service of process may be made upon its principal at 5400 Sun Valley Dr, El Paso, TX 79924.
3. **Defendant El Paso Independent School District (EPISD)** is a public school district located in El Paso, Texas. Service of process may be made upon the Superintendent of Schools at 6531 Boeing Dr, El Paso, TX 79925.
4. **Defendant Coach Eugene Costello** is an individual residing in Texas and was employed as a coach by Andress High School during the relevant time period.

Service of process may be made at Andress High School, 5400 Sun Valley Dr, El Paso, TX 79924.

5. **Defendant Coach Ebbernoel Ruvalcava** is an individual residing in Texas and was employed as a coach by Andress High School during the relevant time period. Service of process may be made at Andress High School, 5400 Sun Valley Dr, El Paso, TX 79924.
6. **Defendants John Does 1-5** are individuals whose identities are currently unknown but who are believed to be coaches, faculty, or staff members at Andress High School. Plaintiff will amend this Complaint to include their true identities when they become known.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 as it involves federal questions relating to 42 U.S.C. § 1983 relating to discrimination on the basis of race. This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.
8. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in El Paso County, Texas.

## III. FACTUAL ALLEGATIONS

9. **Seth Granada's Dedication and Achievements:** Seth Granado, a Caucasian committed student-athlete at Andress High School, consistently attended basketball practices, including both summers of 2021 and 2022. He was recognized for his dedication and hard work by the coaches. Seth attended practices despite various challenges, including illness, an ankle injury, the death of his grandmother, and a brief out-of-town visit, all of which were communicated ahead of time to the coaches.

10. **Racial Facts:** While Seath Granado was a Caucasian student, the coaches and other members of the Andress High School varsity basketball team were Black or persons of color.

11. **False Promises and Bias in Evaluations:** Coach Costello indicated that summer attendance was a key factor in varsity selection, but despite Seth's consistent attendance, those who were promoted to varsity had not attended summer practices, revealing the inaccuracy of Coach Costello's criteria. Seth sacrificed

family time and vacations, believing that such dedication would lead to his advancement, only to realize this was not the case.

11. **Summer 2022 Practice Sessions:** During summer 2022, Coach Gulley informed Seth that he would now report directly to Coach Costello for his training and development. Seth communicated with Coach Costello consistently, detailing his attendance and activities with the trainer. Despite Seth's diligence, Coach Costello selectively communicated open gym practice times to other players, such as Jay, Mickey, and Brandon, who were later promoted to varsity. Seth was excluded from these notifications and opportunities.

12. **Private Coaching and Preferential Treatment:** Coach Costello conducted private coaching sessions for select players, including Carmelo, Lenie, Jay, Brandon, and even a WNBA athlete. These sessions occurred outside of regular practice times and were not offered to Seth, despite his commitment. Additionally, Coach Costello provided transportation for these same players, favoring them over Seth. Such offers were not based on proven talent or potential but on a discriminatory basis excluded Seth.

13. **Recruitment Interest and Missed Opportunities:** In June and July 2022, Seth received multiple letters of interest from universities and invitations to visit, as well as showcase and camp invites. Seth attended six camps, which took place on weekends to avoid conflicts with team practices. College coaches consistently praised his basketball IQ, 3-point shooting, and defensive play. However, despite this external recognition, Seth was not given the same varsity opportunities.

14. **All-American High School Prospect Recognition:** In July 2022, Seth attended the All-American High School tryouts in San Antonio, TX, and was selected as an All-American High School Prospect for 2022, specifically for his basketball IQ and defense. This recognition was publicly announced by a college coach from Webber University.

**15. October 26, 2022- Physical Abuse:** Tryouts was a three hour event, Coach Costello made Seth do wall sits for 45 minutes out of the three hours, Seth watched other kids go next to him and do wall sit for 5-10 minutes then they were told to get off the wall and back to tryouts, Coach would not tell himto get off the wall and come back to play so Seth missed an hour of tryouts. Coach had done the same one hour wall sit treatment to Seth the prior year and each time he developed knee pain. Such excessive force was intended as punishment aimed at humiliation and to deprive him of tryout time necessary to gain a varsity placement versus the of-color players monopolizing the tryouts showing a racial intent to this treatment.

**16. November 10, 2022- Denial of Essential Support:** Seth informed Coach Costello of his selection for the All-American HS Team's invite-only phase, where he

could qualify for the National Team for 2023. A requirement for this tryout was a school uniform. Despite promising to provide one, Coach Costello ultimately failed to do so, resulting in Seth's disqualification from the tryout and a missed opportunity for national exposure and scholarship possibilities.

17. **November 4, 2022 -Verbal Abuse and Exclusion:** Coach Costello told Seth that he would not make varsity because he was "not there mentally" and could not play defense. He withheld information about team placements from Seth, only informing him a week before games began, while other players knew weeks in advance. This exclusion undermined Seth's confidence and opportunities for development.

18. **November 5, 2022-Scholarship Prospects Lost:** When Seth provided his JV schedule to college coaches, their response questioned why he was not on the varsity team. After Seth relayed Coach Costello's comment that he "wasn't worth minutes on the varsity bench," all communication with the college coaches ceased, and the potential for a scholarship opportunity was lost. Such negative talk by Coach Costello was frequent and he texted cuss words as well, encouraging players to take an angry approach to each other while practicing on the court.

19. **Support from Varsity Peers and Discrepancies in Promotion:** Varsity seniors approached Seth, expressing their disbelief over Coach Costello's decision. Another JV player, promoted to varsity despite less experience, told Seth he did not understand why he was moved up instead of Seth, acknowledging that Coach Costello favored "his own."

20. **November 14, 2022 - Public Humiliation by Coach Ru:** During practice, Seth acknowledged Coach Ru's instruction with a thumbs up. In response, Coach Ru berated Seth, cursing and accusing him of disrespect in front of his teammates, further damaging Seth's confidence. Coach Ru gained a UIL suspension of two games for cussing out officials and was to be on two year probation. This did not occur however, as the principal stood by him on the opposite side of the gym as he continued to coach during suspension, and the principal took no action when Plaintiff complained informally about the coaches conduct. Coach Ru continued to coach and impose his discriminatory action against Seth and other players on the basis of race as well as treating players expendable.

21. **November 22, 2022 - Halm-Time Degradation:** During a game, Coach Ru told Seth, "You are the worst JV player and that is why you are not on varsity and will not get any playtime." This was said in front of the entire team, isolating Seth and causing him significant emotional distress.

22. **December 6, 2022 - Game Exclusion and Humiliation:** Seth was benched for most of a game, only being played with 1 minute and 47 seconds remaining. Other teammates apologized to Seth for how he was treated. This pattern of exclusion and

targeting was meant to humiliate Seth.

23. **Seth was taken off the group practice text** such that he missed several practices and was not allowed to play in games. His uniform was given to someone else and he was wiped off the team without being told anything.

24. **December 7, 2022- Emotional Breakdown:** After returning home from school, Seth broke down, expressing that he had been unable to eat or sleep for weeks due to the targeting and embarrassment inflicted by Coaches Costello and Ru. Seth's distress led him to seek professional help.

25. **Two other players suffered racist discrimination and excessive force.** Kael was made to run in the heat outdoors with all else inside on the track, as well as to run inside extra laps while the team watched him. This on the basis of race and prior leg injury. Jo Ollie and another player were doused with bathroom trash by Coach Costello after he locked them in a male bathroom stall for pulling a prank on a student, and took them from class to do so. As the other student was 6 ft tall he was kept on the team, but Ollie shorter was immediately dragged to the office to be dropped from basketball and changed his schedule, as well as added two weeks of in service detention.

26. **26 families complained in two anonymous letters** as to mistreatment of their sons due to racial and excessive force reasons. Plaintiff presented one of the letters to the principal during a meeting and told him that he could get the families together. The principal said he would look into it. However, over time upon asking the status Plaintiff was regularly told by both Principal Alarcon and Athletic Director Cervantes it was underway, and that an HR investigator had tried to reach him without success so that as Mr. Cervantes said they "did their own thing." Plaintiff offered a binder of evidence to him including texts of nasty language, but the binder was not received by the principal or athletic director.

27. **Plaintiff went to the Athletic Director with no better response.** The athletic director listened but did not take any action to work with Plaintiff.

28. **December 8, 2022 - Out-of-Pocket Counseling:** Seth's family sought professional counseling, only to find that in-network providers did not accept their insurance. They were forced to pay for counseling out-of-pocket due to the severity of Seth's emotional distress, and eventually received health through a mental health grant. The providers stated Seth had been mentally abused and traumatized. Seth attended six months of counseling sessions.

29. **Internal Recognition of Bias and Inequitable Treatment:** Coach Gulley privately expressed to Seth's parents that he initially recommended Seth as the top pick for varsity but was overruled by Coach Costello, who insisted on favoring others. Coach Gulley acknowledged the favoritism and confided that he did not agree with the direction the program was taking.

30. **Acknowledgment of Racial Discrimination by Coaching Staff**

On or about November 2022, Plaintiff's father, David Granado, had a detailed conversation with Assistant Coach Gulley about the unfair treatment of Seth. Coach Gulley candidly admitted that Seth, a Caucasian student, was not being treated fairly by Coach Costello, who was Black, and that favoritism toward students of color and inequitable practices toward Caucasian students were prevalent in the basketball program. When asked why Seth, despite being Gulley's top varsity pick, was excluded from opportunities given to others, Coach Gulley gestured to the inside of his wrist, brushed his skin, and said Seth "was the wrong color of skin." This gesture and statement made clear that Seth was being discriminated against based on his race. Coach Gulley further acknowledged that Seth "should probably move schools" and that he would not get fair consideration at Andress High School under Coach Costello, including from recruiters. Coach Gulley explained that while he disagreed with the racial discrimination and the way things were handled, he had no authority to override Coach Costello. This moment confirmed to Seth's family that the discrimination was not merely implicit- it was recognized, acknowledged, and left unaddressed by coaching staff.

31. **Board of Trustees meeting December 19, 2023-** Plaintiff got on the agenda of the Board of Trustees with his complaint against the coaches and administration that he had contacted, which had included copying the superintendent. The Board went into closed session and took no action regarding the allegations of excessive force and disparate treatment due to discrimination of racism despite their knowledge of Coach Ru's UIL suspension and the UIL safety sports regulations.

32. **Plaintiff uncovered an August 25, 2023 report** as to the investigation of Coach Costello and Coach Ru, which was a circuitous jumble of substantiated and unsubstantiated statements that was consciously indifferent and deliberately covered up the coaches' outrageous actions.

33. **Seth changed schools and found success on an international team, only to be haunted by episodes before games, so he dropped basketball.** Seth was recruited at age 16 by a Post Grad coach out of Florida where he played the season successfully.He then played for Team USA for one season during 11th grade year at the age of 17 where he won his first Gold medal overseas, the first for highest stats. He played basketball everyday and went to online high school Laurel Springs High School. Seth played against college teams on the East Coast, then he was recruited to play French Premier League ball in Nanze France, where is where he won his 2nd Gold Medal. However, before games he would have episodes where he could hear his high school coaches yelling at him and he could not stop the screaming in his head, he would go into crying and screaming fits, kicking the dashboard until finally he was exhausted of the cycle and often decided not to play basketball.

34. **Seth chose to graduate with friends at Andress High School and skip athletics.** Seth decided to graduate with friends at Andress High School but did not

want anything to do with the gym or sports there due to the excessive force and discriminatory treatment that had caused a traumatic syndrome and marred his future prospects. Seth would not let his father drop him off in the back of the building near the gym. Seth attends Clemson University today without involvement in basketball, even as a spectator, thus showing the extensive damages that have accompanied him due to the outrageous conduct of the coaches and willful indifference of the Andress High School administration, El Paso Independent School District and Board of Trustees on their failure to admit and take action on the pervasive culture of racism in EISD basketball as sanctioned at Andress High School.

## CLAIMS FOR RELIEF

## COUNT I: VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. § 2000d et seq.) (Against El Paso Independent School District)

35. Plaintiff repeats and re-alleges paragraphs 9 through 34 as if fully set forth herein.

36. At all times material hereto, the defendants and their agents, servants, workmen, and employees, acted under color of state law.

37. Title VI prohibits discrimination on the basis of race, color, or national origin in programs or activities receiving federal financial assistance.

38. Andress High School, a public institution receiving federal funding, as well as EISD, public institution receiving federal funding subjected Plaintiff to race-based discrimination by treating him differently from his peers based on his Caucasian race.

39. Plaintiff complained to both the Principal Alarcon and the Athletics Director Cervantes at the district level, both of whom have authority to take corrective measures and had been contacted multiple times by Plaintiff regarding details of his son's plight under the discrimination, but both of whom stymied an investigation by obfuscating the actual conduct occurring by fabricating a confidential report taking no action against the coaches nor naming any racism as a problem in the sports program. Both further failed to receive the binder of evidence kept by Plaintiff and pretended to have called him but he received no phone call from their investigator.

40. Specific acts of discrimination included, but are not limited to:
    a. Exclusion from varsity-level basketball opportunities despite superior qualifications and performance because he was Caucasian;
    b. Withholding information about practice sessions and opportunities given to other players of a different race because he was Caucasian;

c. Humiliating and degrading Plaintiff publicly during games and practices because he was Caucasian;

d. Denying Plaintiff access to a required uniform for the All-American tryout because he was Caucasian, effectively disqualifying him from national-level recognition; and

e. Favoritism and unequal treatment toward players of a different race, as evidenced by private training sessions and special accommodations provided to them but not Seth because he was Caucasian.

f. The acknowledgment by a coaching staff member that Plaintiff was excluded from varsity-level opportunities and recruiting consideration explicitly because he was "the wrong color of skin," thereby confirming that Plaintiff was subjected to racially motivated discrimination because he was Caucasian.

41. Defendants' actions were intentional, created a hostile environment, and deprived Plaintiff of equal educational and athletic opportunities, including potential scholarship opportunities.

42. Defendants' actions were based upon plaintiff's race, i.e. because he was Caucasian.

43. As a direct and proximate result of Defendants' violations of Title VI, Plaintiff suffered emotional distress, reputational harm, lost educational opportunities, lost basketball trajectory to the professional level, and significant financial damages, including out-of-pocket counseling expenses and future mental health assistance.

44. Defendants acted with deliberate indifference to the discriminatory actions, further exacerbating the harm to Plaintiff.

## COUNT II: VIOLATION OF THE EQUAL PROTECTION CLAUSE

## (42 U.S.C. § 1983- Fourteenth Amendment) (El Paso Independent School District, Coaches Costello and Ru)

45. Plaintiff repeats and re-alleges paragraphs 9 through 44 as if fully set forth herein.

46. At all times material hereto, the defendants and their agents, servants, workmen, and employees, acted under color of state law.

47. The Equal Protection Clause of the Fourteenth Amendment guarantees that no state shall deny any person the equal protection of the laws, which prohibits discrimination on the basis of race. The Fourteenth Amendment's Due Process Clause protects bodily integrity as a core liberty interest.

48. Defendants, acting under color of state law, discriminated against Plaintiff on the basis of his race by engaging in the following conduct:

a. Systematically excluding Plaintiff from athletic opportunities based on his race because he was Caucasian;

b. Imposing disparate and harsher treatment on Plaintiff compared to his non-White teammates;

c. Publicly humiliating Plaintiff during practices and games, to undermine his confidence and ability to perform because he was Caucasian; and

d. Denying Plaintiff necessary resources and opportunities for his athletic and academic success because he was Caucasian.

e. Acknowledgment by Assistant Coach Gulley that Plaintiff was treated unfairly due to his race, including a direct reference to Plaintiff's skin color as the reason for his exclusion, confirming racial bias was the basis for Defendants' actions.

f. 26 families had similar experiences and shared these concerns of being non-black, and are available as witnesses.

g. The Andress High School and EISD Board of Trustees allowed Coach Ru to continue coaching instead of undergo a two year probationary period due to pervasive custom of racism and conscious disregard for and further knowingly violate the law. The principal stood next to Coach Ru in the gym and helped him violate the terms of his UIL suspension.

49. Plaintiff’s son is Caucasian. The basketball coaches intentionally treated Plaintiff’s son and other Caucasian players differently from similarly situated black players. The coaches imposed extreme punitive discipline on Caucasian players, including prolonged wall sits, forced running, public humiliation, exclusion from team communications, and physical dragging by jerseys, while black players who engaged in comparable conduct were not subjected to similar punishment.

50. Coaches removed Plaintiff’s son from the team group text, causing him to miss practices, games, or team communications. Non-Caucasian players remained on the group text and continued receiving practice and game information. The exclusion was not an inadvertent administrative error; it was part of a pattern of isolating and disadvantaging Plaintiff’s son and other Caucasian athletes.

51. Plaintiff and other families repeatedly complained to school officials, including the athletic director, principal, superintendent, and board of trustees, that the basketball program was using racially disparate discipline and abusive tactics. Despite receiving complaints from approximately 26 families and documentation in a binder of evidence, District officials failed to take meaningful corrective action.

52. The disparate discipline deprived Plaintiff’s son of equal access to basketball opportunities, equal participation in team communications, fair tryout opportunities, varsity consideration, professional play trajectory, emotional safety, and the equal protection of school rules , as well as lack of bodily intrusion.

53.As a direct and proximate result of Defendants' discriminatory actions, Plaintiff suffered significant emotional distress, damage to his reputation, loss of educational and athletic including professional opportunities, and financial harm.

54. Their conduct was not objectively reasonable because intentional race discrimination by public-school officials violates clearly established constitutional law.

55. The District had actual notice of a widespread pattern of abusive, excessive, and racially disparate discipline in the basketball program. At least 26 families complained about the basketball coaches' treatment of players. The complaints involved recurring forms of misconduct, including prolonged punitive exercises, humiliation, exclusion from team communications, physical dragging, abusive language, and retaliation against players or parents who complained.

These complaints were not isolated or unrelated. They described the same coaching staff, the same basketball program, the same disciplinary methods, and the same administrative failure to intervene. The number and consistency of complaints placed the District, its athletic director, principal, superintendent, and board of trustees on notice of a persistent custom.

56. Plaintiff appeared before the Board of Trustees and was placed on the agenda to address the basketball program's abusive and discriminatory treatment. Instead of addressing the complaints in open session or adopting corrective measures, the matter was moved to closed session. After closed session, the Board took no corrective action, imposed no discipline, required no training, restored no athletic opportunity, and allowed the challenged coaching practices to continue.

## COUNT III: NEGLIGENCE

## (EISD and Coaches Costello and Ru)

57.Plaintiff repeats and re-alleges paragraphs 9 through 56 as if fully set forth herein.

58.Defendants owed Plaintiff a duty of care to provide a safe and supportive educational environment free from discrimination, hazing, harassment, and verbal abuse.

59.Defendants breached their duty by:

a. Failing to intervene in or prevent the discriminatory treatment of Plaintiff because he was Caucasian;

b. Allowing verbal and mental abuse, hazing, and exclusionary practices to persist unchecked because he was Caucasian;

c. Such outrageous conduct included making Seth do an hour of wall sitting to miss try outs while black players only did five to ten minutes; running extra while team watched, or running outdoors in heat while non-Caucasian players ran inside; jersey dragging across the court and deliberately humiliating jabs during games to undermine Seth as Caucasian;

d. Ignoring complaints raised by Plaintiff and his family regarding unequal treatment and targeting because he was Caucasian, as well as complaints of 26 other families regarding the same such outrageous conduct; and

e. Engaging in discriminatory and abusive conduct directly.

60. Defendant Coach Costello and Defendant Coach Ru were professional employees of the District acting under color of school authority and within the apparent scope of their employment. Their conduct, however, falls outside the immunity afforded by Texas Education Code § 22.0511 because they used excessive force in the discipline of students a statutory exception to such immunity. The complained-of acts were imposed as punishment, humiliation, retaliation, and coercive discipline, not as reasonable athletic instruction or ordinary conditioning. The acts included prolonged wall sits imposed to cause students to miss tryouts, forced punitive running, public dragging by jerseys, confinement and trash-pouring punishment, and targeted physical intimidation. The force and coercive discipline were excessive in light of the students' ages, the absence of any safety justification, the public humiliation involved, the repeated nature of the acts, and the resulting physical and psychological harm.

61. Defendants' breach of duty directly and proximately caused Plaintiff to suffer emotional harm, reputational damage, financial loss, and loss of educational and athletic opportunities including professional trajectory. As a direct result of the excessive disciplinary conduct, Plaintiff's son suffered severe mental anguish, humiliation, emotional trauma, loss of confidence, loss of basketball opportunity, counseling expenses, school disruption, transfer to another school, recurrent emotional episodes before games, anger outbursts, crying spells, and eventual abandonment of basketball despite prior athletic success after leaving Andress High School.

62. As a result of Defendants' negligence, Plaintiff required professional counseling, which caused significant financial strain on his family, and due to traumatic episodes before games Seth dropped basketball and has continued mental health therapy needs and expenses.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (Against Coaches Costello and Ru)

63. Plaintiff repeats and re-alleges paragraphs 9 through 62 as if fully set forth herein.

64. Defendants' conduct was extreme, outrageous, and intended to cause, or was recklessly indifferent to causing, severe emotional distress to Plaintiff.

65. Specific instances of outrageous conduct include:
   a. Forcing Plaintiff to perform wall sits for 45 minutes during tryouts while non-Caucasian were subjected to significantly shorter durations of only five to ten minutes;
   b. Publicly berating Plaintiff with statements like, "You are the worst JV player and that is why you are not on varsity," in front of teammates;
   c. Silently removing Plaintiff from group practice text so that he would miss practices and not be able to play in the game.
   d. Humiliating Plaintiff during games by benching him and only allowing him to play with less than two minutes remaining; and
   e. Refusing to provide Plaintiff with the required uniform for the All-American tryout, knowing it would disqualify him from a prestigious opportunity.
   f. Silently giving his uniform to someone else and pushing him off the team.

66. This conduct caused Plaintiff to experience severe emotional distress, including an inability to eat or sleep for weeks, emotional breakdowns, and the need for professional counseling.

67. As a direct result of Defendants' conduct, Plaintiff and his family incurred significant financial costs for out-of-pocket counseling, and Plaintiff suffered long-term emotional harm that has manifested in outburst of crying, screaming and kicking the dashboard before basketball games.

## COUNT V: RETALIATION
## (Against EISD and Coaches Costello and Ru)

68. Plaintiff repeats and re-alleges paragraphs 9 through 67 as if fully set forth herein.

69. Plaintiff and his family raised concerns about his exclusion and discriminatory treatment to school officials.

70. In response, Defendants retaliated by:

g. Further excluding Plaintiff from practices and games;

h. Publicly humiliating him during team activities; and

i. Hindering his ability to participate in events that could have enhanced his athletic career, such as the All-American tryouts.

71. This retaliation caused additional emotional distress, reputational harm, and the loss of educational and athletic opportunities including a professional trajectory.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectlfully requests that this Court:**

72. Declare that Defendants' actions violated federal and state laws, including Title VI, the Equal Protection Clause, Due Process Clause and common law.

73. Award compensatory damages for emotional distress, reputational harm, counseling expenses, lost educational and athletic opportunities, past and future medical expense, and past and future loss of earning capacity.

74. Award punitive damages to deter future misconduct by the Defendants.

75. Grant injunctive relief, requiring EISD to implement anti-discrimination training and oversight.

76. Award attorneys' fees, costs, and such other relief as the Court deems just and proper.

Respectfully Submitted,

*/s/ Renee Walker*

___________________________

Renee Walker

LLG National Law Group

3003 North Central Ave. Ste 685

Phoenix, AZ 85012

(P) 888-826-6580

Renee.walker@llgnational.com