IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| DAVID GRANADO, Individually and<br>as Next Friend of Seth Granado, a Minor,<br><br>Plaintiffs,<br><br>v.<br><br>EL PASO INDEPENDENT SCHOOL<br>DISTRICT, COACH EUGENE COSTELLO,<br>COACH EBBERNOEL RUVALCAVA,<br>ANDRESS HIGH SCHOOL, and JOHN DOES 1-5,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 3:25-CV-00504-LS |

**DEFENDANTS EL PASO INDEPENDENT SCHOOL DISTRICT AND COACH EUGENE COSTELLO'S MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6) PLAINTIFFS' AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATED DISTRICT JUDGE:

COMES NOW Defendant El Paso Independent School District ("EPISD") and Coach Eugene Costello ("Costello) (collectively, "Defendants"), and respectfully file this Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 17) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.
## SUMMARY OF ARGUMENT AND PROCEDURAL POSTURE

1. On July 6, 2026, the Court granted Defendants' Motion to Dismiss against Andress High School (ECF No. 14). The Court also granted Defendant Costello's Motion to Dismiss as to the Title VI, tort, and Section 1983 claims against him (ECF No. 14). Additionally, the Court granted Defendant EPISD's Motion to Dismiss as to the same claims against Andress High School, Title

VI, tort, and Section 1983 (ECF No. 14). However, the Court gave Plaintiffs until July 27, 2026 to file an amended complaint to cure the deficiencies.

2. On July 27, 2026, Plaintiffs filed their Amended Complaint (ECF No. 17). The Amended Complaint adds additional factual allegations, but remains substantively the same as the Complaint such that the deficiencies are not cured. Moreover, it includes an additional cause of action for "retaliation" against EPISD, Costello, and Ru[1], which should also be dismissed and fails as a matter of law.

3. Therefore, Defendants EPISD and Costello reassert their arguments in its Motion to Dismiss (ECF No. 13) as to Plaintiffs' Amended Complaint as asserted herein. First, Defendant Costello seeks dismissal of (a) Plaintiffs' Section 1983 claim because it does not overcome his qualified immunity, and (b) Plaintiffs' claims of negligence, intentional infliction of emotional distress claims, and retaliation as they are also insufficient to overcome the Texas Tort Claims Act immunity. Second, Plaintiffs' Amended Complaint continues to (a) fail to state a claim under Title VI, (b) fail to state a claim under Section 1983, and (c) fail to overcome EPISD's immunity as to the claims of negligence and retaliation. Finally, Defendants request dismissal of Plaintiffs' claims for punitive damages, emotional distress, mental anguish damages, monetary damages, or other equitable relief as such damages are barred under controlling Fifth Circuit precedent under the circumstances alleged.

[1] Defendant Ruvalcava has been dismissed (ECF No. 20).

## II.
## ARGUMENT AND LEGAL AUTHORITIES

### A. Legal Standard under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6)

#### *1. Rule 12(b)(1)- Lack of Subject Matter Jurisdiction*

4. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power,* 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A party challenges a Court's subject-matter jurisdiction through a motion to dismiss under Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be based only on the Complaint. *Ramming v. United States*., 281 F.3d 158, 161 (5th Cir. 2001). If the court determines that it lacks subject-matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3). "A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Home Builders Ass'n of Miss.*, 143 F.3d at 1010.

5. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, [such as Defendants do here,] the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Semien v. Dall. Indep. Sch. Dist.*, No. 3: 24-CV-3147-L-BW, 2025 U.S. Dist. LEXIS 129088, at *4-5 (N.D. Tex. 2025) (citing *Ramming*, 281 F.3d at 161).

#### *2. Rule 12(b)(6)- Failure to State a Claim for Which Relief Can Be Granted*

6. A motion to dismiss under Rule 12(b)(6) is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). However, plaintiffs must "do more than recite the formulaic elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 556-57 (2007). The "factual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Rico v. El Paso Indep. Sch. Dist.*, No. EP-17-CV-00183-KC, 2018 U.S. Dist. LEXIS 245249, at *4 (W.D. Tex. 2018).

**B. <u>Plaintiffs' Claims Against Defendant Costello Should Be Dismissed.</u>**

*1. <u>Legal Standard for Section 1983 Claims and Qualified Immunity</u>*

7. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the violation was committed by a person acting under color of state law. 42 U.S.C. § 1983. For individual liability, the plaintiff must allege personal involvement in the constitutional violation.

8. Government officials sued for money damages under § 1983 are entitled to qualified immunity unless their actions (a) violated a federal statutory or constitutional right and (b) that right was clearly established at the time of their conduct. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011); *Oliver v. Arnold*, 3 F.4th 152, 159 (5th Cir. 2021). Qualified immunity shields a defendant not only from liability, but also from suit. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42 (1995). The immunity from suit "is effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). A court may address the "second" or "clearly established law" prong first, and need not address the first prong if plaintiff does not prevail on the second. *Pearson, supra*, 555 U.S. at 236-43; *accord, Al-Kidd, supra*, 563 U.S. 731 at 735.The Fifth Circuit has established a heightened pleading standard for Section 1983 claims against public officials, requiring "more than conclusory assertions," instead it requires "claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). "The doctrine of qualified immunity serves to shield a

governmental official from civil liability for damages based upon the performance of discretionary functions . . ." *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001).

9. A federal constitutional right is "clearly established law" when its contours are "sufficiently clear" that "every 'reasonable official would have understood that what he is doing violates that right.'" *Al-Kidd*, 563 U.S. at 741 (citation omitted). It does "not require a case directly on point, but existing precedent must have placed the . . . question beyond debate." *Id.* If the issue has not been placed "beyond debate" by "controlling authority," then the plaintiffs must show a "robust 'consensus of cases of persuasive authority.'" *Id.* (citation omitted). Moreover, the court is "not to define clearly established law at a high level of generality;" rather, the clearly established law must squarely address the specific conduct under attack. *Id.* at 742.

10. Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 743 (citation omitted). Thus, a school official can prevail on the qualified immunity defense, even if his challenged conduct was unconstitutional. *Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) *(en banc), cert. denied,* 567 U.S. 905 (2012). As stated by the court in *Morgan v. Swanson*, "our qualified-immunity inquiry does not ask what we think of a defendant's conduct as a normative matter. Rather, qualified immunity is a dispassionate inquiry that asks us only to identify the state of the law as a descriptive matter." *Id.* at 383. Texas courts have recognized that where the qualified immunity defense is raised in response to a Section 1983 claim in state court, it must be "evaluated under federal, and not state, law." *Robinett v. Carlisle*, 928 S.W.2d 623, 625 (Tex. App. – Fort Worth 1996, writ denied), *cert. denied*, 522 U.S. 820 (1997). "Qualified immunity is a substantive right . . .." *Id.* at 626.

*2. Plaintiffs Fail to Plead Sufficient Facts to Overcome Costello's Immunity*

11. The Amended Complaint fails to allege facts sufficient to overcome the qualified immunity of Defendant Costello. While the Amended Complaint alleges that he engaged in discriminatory conduct, it does not establish that his actions violated clearly established law of which a reasonable person would have known. The allegations regarding verbal criticism, coaching decisions, and team selection fall within the discretionary authority of coaches and do not clearly violate established constitutional rights. Plaintiffs' new factual allegations in their Amended Complaint do not overcome the deficiencies such that Costello's qualified immunity is overcome. Defendant Costello's alleged actions were "discretionary" and not merely "ministerial" as he exercised discretion in his decisions.

12. Likewise, the Amended Complaint does not meet the heightened pleading standard required for Section 1983 claims against public officials. Plaintiffs' Amended Complaint continues to make conclusory assertions regarding Costello's treatment without providing specific facts that would establish that Costello's actions were motivated by racial animus, rather than legitimate pedagogical or athletic considerations based on the information available to Costello at the time, where he could have believed that his conduct and decisions were justified. *See Downing v. Brown*, 935 S.W.2d 112, 114 (Tex. 1996) (reversing lower court and rendering judgment for teacher on basis that maintaining classroom discipline was inherently discretionary). The allegations in the Amended Complaint do not overcome Costello's reasonable decision that other players were more qualified for the varsity team.

*3. Plaintiffs' State Law Torts Claims Are Barred*

a. Official Immunity

13. Moreover, Texas common law recognizes "official immunity." It protects governmental employees from lawsuits "arising from performance of their (1) discretionary duties (2) in good

faith (3) within the scope of their authority." *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 422 (Tex. 2004). "Ministerial actions require obedience to orders or the performance of a duty to which the actor has no choice…On the other hand, if an action involves personal deliberation, decision and judgment, it is discretionary." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994). "Good faith" is analyzed under an objective standard that asks "whether a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Ballantyne*, 144 S.W.3d at 426.

b. Texas Tort Claims Act

14. Additionally, the Texas Tort Claims Act provides that a suit against an employee of a governmental unit based on conduct within the general scope of employment shall be dismissed if the suit could have been brought against the governmental unit. Tex. Civ. Prac. & Rem. Code §§ 101.106(a) and (e). Subsections 101.106(a) and (e) of the Texas Civil Practice and Remedies Code provide, respectively, that the filing of suit "against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter," and that if suit is filed "against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." *See Texas Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379 (Tex. App.-Fort Worth 2008, no pet.) ("*any* same-subject-matter suit against the employee is barred—regardless of the capacity in which the plaintiff sues the employee" (original emphasis)). The Supreme Court noted that the Legislature enacted Section 101.106 to "protect governmental employees by favoring early

dismissal when a claim regarding the same subject matter is also made against the governmental employer." *Mission Consolidated Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008).

15. Here, EPISD is a "governmental unit" as defined under Texas Civil Practice and Remedies Code Section 101.001(3), and Defendant Costello is an "employee" of the EPISD as that term is defined in Section 101.001(2). As such, Plaintiffs' claims are barred. Common law official immunity protects governmental employees from lawsuits arising from performance of their discretionary duties, in good faith, within the scope of their authority.

c. Texas Education Code Immunity.

16. Pursuant to Section 22.0511 of the Texas Education Code, professional employees of a school district are also entitled to immunity from liability for acts within the scope of their employment that involve the exercise of judgment or discretion Tex. Educ. Code § 22.0511. This immunity does not apply only to acts that are ministerial in nature or that involve excessive force in negligent disciplinary actions. Section 22.0511 of the Texas Education Code provides professional employees with broad immunity: "A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students." *Carey v. Aldine Indep. Sch. Dist.*, 996 F. Supp. 641, 656 (S.D. Tex. Jan. 12, 1998). The Court further notes that "[a]cts not involving 'the exercise of judgment or discretion' are those 'where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.'" *Id.*

*4.* *Plaintiffs' Negligence, IIED and Retaliation claims should be dismissed.*

17. Plaintiffs undeniably sued both EPISD and its employee Costello. Plaintiffs' negligence claim against Costello is based on his alleged failure to provide a supportive educational environment, which involves the exercise of judgment and discretion in coaching and team selection, amongst other claims. These actions fall within the scope of his employment as a coach and are protected by statutory immunity. Therefore, such claims are barred.

18. Furthermore, a cause of action for intentional infliction of emotional distress ("IIED") is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (*quoting Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)); *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (IIED was "never intended to supplant or duplicate existing statutory or common-law remedies.").

19. Under Texas law, to establish intentional infliction of emotional distress ("IIED"), a plaintiff must prove: (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions caused the plaintiff emotional distress, and (4) the emotional distress was severe. *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 195 (5th Cir. 1996). To be extreme and outrageous, conduct must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*; *Hughes Training, Inc. v. Cook*, 254 F.3d 588, 594 (5th Cir. 2001). However, if Plaintiffs' IIED claim is based upon the same conduct that is alleged to give rise to and is alleged in support of several other claims, then the IIED claim should

be dismissed. *Yadav v. Frost Bank,* No. SA-20-CV-00005-FB-ESC, 2020 U.S. Dist. LEXIS 236205, 2020 WL 7385842, at *7 (W.D. Tex. Dec. 16, 2020), aff'd, 851 F. App'x 509 (5th Cir. 2021); *see also Balderrama v. Pride Indus., Inc.*, 963 F.Supp.2d. 646, 668 (W.D. Tex. 2013) (where the IIED claim relied upon the same facts in support of plaintiff's other claims, the IIED claim was barred as a matter of law).

20. Here, the conduct alleged in the Amended Complaint is the same alleged conduct making the basis as Plaintiffs' numerous other claims against Costello and EPISD. Accordingly, Plaintiffs' intentional infliction of emotional distress claim should be precluded as a "gap-filler" tort, and is also barred by immunity as discussed above.

21. Moreover, Plaintiffs' Amended Complaint adds a new cause of action of "retaliation," without any statutory basis (ECF No. 17, ¶¶ 68-71). Plaintiffs' purported tort claim of retaliation also fails as a matter of law as it is also barred by immunity.

## C. <u>Plaintiffs' Claims In the Amended Complaint Against EPISD Should Be Dismissed.</u>

### *1. <u>Section 1983 Claims Against EPISD Fail.</u>*

22. Plaintiffs' Amended Complaint fails to allege facts sufficient to establish a claim against it pursuant to Section 1983. 42 U.S.C. § 1983 does not make local governmental entities, including school districts, vicariously liable for the wrongdoing of their employees; in other words, it does not provide for *respondeat superior* liability. *Longoria v. San Benito Indep. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019), *citing Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under Plaintiffs' Section 1983 claim, Plaintiffs must demonstrate "(1) a policymaker; (2) an official policy; (3) and a violation of constitutional rights whose 'moving force' is the policy or custom." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *Longoria v. San Benito Indep. Sch. Dist.*, 942 F.3d

258, 271 (5th Cir. 2019); *Bhombal v. Irving Indep. Sch. Dist.*, 809 F.App'x 233, 237 (5th Cir. 2020). A policy statement, ordinance, or regulation, or "persistent widespread practice of . . . official or employees, which although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

23. In this case, EPISD's final policymaker is its Board of Trustees as unequivocally stated in Section 11.151(b) of the Texas Education Code.[2] The Board of Trustees is "the school district's policymaking body." *Longoria*, 942 F.3d at 271, *citing* Tex. Educ. Code § 11.151(b). Therefore, Plaintiffs must prove that the board of trustees adopted or approved a specific policy that caused the alleged injury. *Longoria*, 942 F.3d at 271. Moreover, a specific *decision* by an employee who is implementing EPISD's policy is not the same as a *policy*. *Id.* at 271-72. The "official policy" requirement is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 364-65 (5th Cir. 2020) (court's emphasis, citation omitted).

24. Accordingly, it is "critical to distinguish between 'an exercise of *policymaking authority* and an exercise of *delegated discretionary policy-implementing authority*,'' because the "former can trigger § 1983 municipal liability; the latter cannot." *Id.* at 366 (court's emphasis, citations omitted). In *Doe*, the plaintiff could not demonstrate that any applicable school board policy was itself unconstitutional, and thus, her claims against the district failed – even though she had

[2] Section 11.151(b) of the Texas Education Code explicitly states that "[t]he trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district…"

"endured contemptible misconduct," and two former school district employees "were criminally punished" as a result of their misconduct toward her. *Id.* at 369.

25. Even the superintendent – the chief executive officer for a Texas school district – has no "policymaking authority." *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993). Although not pled by Plaintiffs, even if the superintendent has been delegated final decision-making authority by the board, that "does not mean that he had or had been delegated the status of policymaker, much less final policymaker." *Id.* at 1246. Again, for liability purposes, the law distinguishes "between those having mere *decision-making* authority and those having *policymaking* authority." *Id.* (court's emphasis). A district administrator who is authorized to interpret, apply, or implement board policy still does not have "final *policymaking* authority." *Id.* at 1249-50 (court's emphasis). And if a district administrator interprets or applies board policy "erroneously," that is no basis to impose liability on the district. *Id.*

26. In order to characterize administrative decisions as a "custom" upon which district liability may be predicated, the Plaintiffs must demonstrate that the decision "was cast in the form of a policy statement and expressly approved by" the board, or was part of a series of decisions manifesting a custom of which the board of trustees "must have been aware" and at least tacitly approved. *Id.* at 1251. In other words, a "custom" that can be used as a basis for liability must be "a well settled custom that fairly represented official policy and actual or constructive knowledge of the custom was attributable to the governing body or an official delegated policymaking authority." *Id.* at 1241; *see also Gross v. City of Grand Prairie*, 181 F.3d 613, 617-18 (5th Cir. 1999), *citing Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992).

27. Plaintiffs' Amended Complaint fails to state a claim pursuant to Section 1983 for which relief can be granted against EPISD. The Complaint makes general and conclusory allegations

regarding a Board of Trustees meeting (ECF Doc. 17), however, it fails satisfy the requirement that the complained of actions were the result of an official policy or custom that the Board of Trustees approved. Plaintiffs simply recount the meeting where they presented their complaint to the Board of Trustees. Accordingly, Plaintiffs' Section 1983 cause of action against EPISD should be dismissed under Rule 12(b)(6) as it fails to state a claim for which relief can be granted.

*2. Plaintiffs' Title VI Claims Against EPISD Fail*

28. Under Title VI "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d. "Courts have consistently concluded there is no claim for vicarious liability under Title VI." *Lee-Khan v. Austin Indep. Sch. Dist.*, No. A-13-CV-00147-LY, 2013 U.S. Dist. LEXIS 107074, at *14-15 (W.D. Tex. 2013), *adopted* 2013 U.S. Dist. LEXIS 187553 (W.D. Tex 2013) (citing *Vouchides v. Houston Cmty. College Sys.*, 2011 U.S. Dist. LEXIS 112609, 16 (S.D. Tex. Sept. 30, 2011)). If Plaintiffs do not allege a discriminatory policy by the school district, they must "plausibly allege that an 'appropriate person" in the district—i.e., someone who could take corrective measures—had 'actual knowledge' of intentional discrimination yet responded with 'deliberate indifference.'" *Bhombal v. Irving Indep. Sch. Dist.*, 809 F. App'x 233, 237 (5th Cir. 2020).

29. Plaintiffs' Amended Complaint fails to plead sufficient facts such that relief may be granted because their Title VI claim against EPISD is premised on the various allegations regarding the coaching staff allegedly engaging in racially discriminatory actions against the minor plaintiff, but there are no allegations that are attributable to the Board of Trustees, the only policymakers for EPISD. Notably, Plaintiffs cannot maintain their Title VI claims through vicarious liability. *See*

*Lee-Khan*, 2013 U.S. Dist. LEXIS 107074, at *16. Plaintiffs' Amended Complaint does not plead how the District actually knew about the alleged race discrimination yet was deliberately indifferent to it. "[A]lleging school official were told of [plaintiff's] subjective beliefs is not the same thing as alleging [the school district] had actual knowledge of racial discrimination and was deliberately indifferent." *Bhombal v. Irving Indep. Sch. Dist*., 809 F. App'x 233, 237 (5th Cir. 2020). "Allegations of subjective views, without supporting factual allegations, fail to give rise to an inference of intentional discrimination, much less to an inference of deliberate indifference to discrimination." *Id.* (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000)). Therefore, while Title VI claims may be brought against EPISD as a recipient of federal funds, the Amended Complaint continues to fail at alleging facts sufficient to establish deliberate indifference by EPISD to known acts of racial discrimination. Therefore, Plaintiffs fail to state a claim under Title VI for which relief can be granted.

*3. Emotional Distress, Mental Anguish Damages, and Money Damages Are Not Recoverable Under Title VI*

30. "In *Cummings*, the Supreme Court held that emotional distress damages are no longer available under anti-discriminatory legislation passed pursuant to the Spending Clause." *Jones v. Katy Indep. Sch. Dist.*, No. 4:24-CV-1039, 2025 U.S. Dist. LEXIS 46235, at *12 (S.D. Tex. 2025) (citing *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212, 230 (2022)). The court in *Cummings* was also explicit to find that Title VI was a Spending Clause statute. *Id.* (citing *Cummings*, 596 U.S. at 218). Furthermore, "relief in the form of money damages or other equitable relief based on past violations is not available under Title VI." *Khan v. Austin Indep. Sch. Dist.*, No. A-13-CV-00147-LY, 2013 U.S. Dist. LEXIS 107074, at *15 (W.D. Tex. 2013) Therefore, Plaintiffs cannot recover emotional distress, mental anguish damages, monetary damages, or other equitable relief under its Title VI claims against Defendants and should be dismissed. *Id.*

*4. Plaintiffs' state law claims against EPISD are Barred.*

31. Any purported state law claims against EPISD (negligence and retaliation) are barred by governmental immunity and are not allowed under the Texas Tort Claims Act. *Semien v. Dall. Indep. Sch. Dist.*, No. 3: 24-CV-3147-L-BW, 2025 U.S. Dist. LEXIS 129088, at *8-9 (N.D. Tex. 2025) (the school district was immune from claims of negligence, gross negligence and intentional infliction of emotional distress). The Texas Supreme Court has held that "an independent school district is an agency of the state and, while exercising governmental functions, is not answerable for its negligence in a suit sounding in tort." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 878 n. 8 (5th Cir. 2000) (citing *Barr v. Bernhard*, 562 S.W.2d. 844, 846 (Tex. 1978)). Furthermore, the Amended Complaint fails to plead facts that would bring the claims within any waiver of immunity under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code §§ 101.051, 101.057.

30. Accordingly, the purported tort claims against EPISD should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction due to governmental immunity. Additionally, the claims against EPISD should be dismissed under Rule 12(b)(6) for failure to state a claim for which relief could be granted.

32. Because the Amended Complaint fails to sufficiently plead facts to establish liability under Section 1983, deliberate indifference under Title VI, or a waiver of immunity under the Texas Tort Claims Act, and as such, Plaintiffs' claims against EPISD should be dismissed.

**D. Punitive Damages Claims Against All Defendants Should Be Dismissed.**

33. Punitive damages are not recoverable against school districts in Section 1983 actions. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Similarly, punitive damages are not available under Title VI against entities receiving federal funds, such as EPISD. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002). As to Plaintiffs' state law claims, Texas Civil Practice and Remedies Code, Section 101.024 prohibits a party from recovering exemplary damages against a

school district. Therefore, Plaintiffs' request for relief of punitive damages should be dismissed under Rule 12(b)(6).

## III.
## CONCLUSION

34. For the foregoing reasons, Defendants El Paso Independent School District and Coach Eugene Costello respectfully reassert their request that this Court grant their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and dismiss with prejudice (a) Section 1983 claims against Defendant Costello based on qualified immunity and failure to state a claim; (b) negligence, intentional infliction of emotional distress, and retaliation claims against Defendant Costello based on official and statutory immunity and failure to state a claim; (c) claims against El Paso Independent School District, including claims for emotional distress or mental anguish under Title VI, based on governmental immunity and failure to state a claim; (d) claims for punitive damages against all Defendants as barred under Supreme Court and Fifth Circuit precedent; and (e) for such other further relief to which Defendants may be entitled.

Respectfully submitted,

**MOUNCE, GREEN, MYERS,**
**SAFI, PAXSON & GALATZAN, P.C.**
P.O. Box 1977
El Paso, Texas 79999-1977
Telephone: (915) 532-2000
Facsimile: (915) 541-1526

By: ______________________
**Monica L. Perez**
State Bar No. 24083662
perez@mgmsg.com
**S. Anthony Safi**
State Bar No. 17516800
safi@mgmsg.com

Attorneys for Defendants El Paso Independent School District and Coach Eugene Costello

## CERTIFICATE OF SERVICE

I, Monica L. Perez, hereby certify that on the 17th day of August, 2026, in compliance with the Federal Rules of Civil Procedure, a true and correct copy of the foregoing document was served on the following:

Renee Walker
LLG National Law Group
3003 North Central Ave., Ste 685
Phoenix, Az 85012
(888) 826-6580
(915) 206-3511 (Fax)
Renee.walker@llgnational.com
*Attorney for Plaintiffs*

Served via:

____ Facsimile
____ Certified Mail, RRR
__X__ CM/ECF (E-Service)

______________________
**Monica L. Perez**