**UNITED STATES DISTRICT COURT WESTERN DISTRICT OF TEXAS EL PASO DIVISION**

| | |
|---|---|
| **DAVID GRANADO, Individually and as Next Friend of Seth Granado, a Minor.** ***Plaintiff*** vs. **EL PASO INDEPENDENT SCHOOL, DISTRICT, COACH EUGENE COSTELLO, et al.** ***Defendant(s).*** | **Case No. 3:25-cv-00504** |

**Plaintiff's Opposition to Defendants' Motion to Dismiss**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW DAVID GRANADO,** individually and on behalf of his son SETH GRANADO and brings this OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, and would therefore show as follows:

**I. Applicable Pleading Standard**

A complaint survives a motion under Federal Rule of Civil Procedure 12(b)(6) when it contains sufficient factual allegations, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At this stage, the Court must accept well-pleaded facts as true and draw reasonable inferences in Plaintiff's favor. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

A plaintiff is not required to prove the case at the pleading stage. Nor must a complaint plead every fact ultimately necessary to establish municipal liability. It must provide fair notice of the claim and allege facts

supporting a plausible entitlement to relief. See *Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014) (per curiam).

**II. Count I Plausibly Alleges Intentional Racial Discrimination Under Title VI**

Title VI provides that no person shall, on the ground of race, color, or national origin, be excluded from participation in, denied the benefits of, or subjected to discrimination under a program receiving federal financial assistance. 42 U.S.C. § 2000d. To state a claim for damages under Title VI, Plaintiff must plausibly allege intentional discrimination by the recipient of federal funds. *Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001); *Fennell v. Marion Independent School District*, 804 F.3d 398, 408 (5th Cir. 2015).

The operative complaint does more than recite the elements of a Title VI claim. Plaintiff alleges that EISD's Athletic Director, Mr. Cervantes, possessed authority to receive complaints and implement corrective measures concerning the District's athletic programs. Plaintiff further alleges that Cervantes participated in or received a nonpublic study or investigative report concerning Coaches Costello and Rivalcava, dated August 25, 2023, See Dkt. 17 at 6, ¶ 32.

According to the complaint, the report concerned complaints made by approximately 26 families regarding discriminatory treatment within the basketball program. Plaintiff alleges that the affected families were light-skinned and that the complaints reflected differential treatment based on race or skin color. Plaintiff also alleges that the report reversed, misclassified, or otherwise obscured which complaints had been substantiated and which had not, thereby concealing the extent of the discriminatory conduct. Despite the number and similarity of the complaints, Plaintiff alleges that Cervantes and EISD failed to discipline the coaches, correct the discriminatory practices, or protect affected students.

These allegations permit a reasonable inference that EISD had actual notice of recurring race-based complaints and nevertheless failed to take meaningful corrective action. See *Fennell*, 804 F.3d at 410–11 (addressing actual

knowledge and deliberate indifference in the Title VI context). Whether the report accurately categorized the complaints, whether all 26 complaints involved materially similar conduct, and whether EISD's response was adequate are factual matters that should not be resolved on a motion to dismiss.

Accordingly, the motion to dismiss Count I should be denied as to EISD.

To the extent Count I is asserted against Coach Costello individually under Title VI, Plaintiff acknowledges that Title VI ordinarily provides a cause of action against the recipient of federal funds, not against an individual employee who is not personally a recipient. See *Price ex rel. Price v. Louisiana Department of Education*, 329 F. App'x 559, 561 (5th Cir. 2009). That limitation, however, does not require dismissal of the separate constitutional claims asserted against Costello under § 1983.

**III. Plaintiff Plausibly Alleges Municipal Liability Against EISD Under 42 U.S.C. § 1983**

A school district may be liable under § 1983 when a constitutional injury results from an official policy, a widespread and persistent practice, a decision by an official with final policymaking authority, or, in appropriate circumstances, ratification by a final policymaker. *Monell v. Department of Social Services*, 436 U.S. 658, 690–94 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 578–79 (5th Cir. 2001).

An actionable custom or practice is one that is sufficiently persistent and widespread to constitute the entity's standard operating procedure rather than an isolated act. *Webster v. City of Houston*, 735 F.2d 838, 841–42 (5th Cir. 1984) (en banc); *Peterson v. City of Fort Worth*, 588 F.3d 838, 850–51 (5th Cir. 2009). The alleged incidents must be sufficiently similar and sufficiently numerous to support a reasonable inference of a persistent practice. *Peterson*, 588 F.3d at 851.

Here, Plaintiff does not rely on a single isolated incident. The complaint alleges that approximately 26 families made complaints involving discriminatory treatment in the basketball program; that the complaints were brought to District officials with authority to investigate or recommend corrective measures; that the complaints

were addressed in a purported confidential investigative report of August 25, 2023 concerning Coaches Costello and Rivalcava; and that EISD failed to take effective corrective action. Dkt. 17 at p.6 ¶ 32.

Twenty-six allegedly similar complaints involving the same athletic program and overlapping decision-makers plausibly support an inference of a recurring practice rather than an isolated personnel dispute. At the pleading stage, those allegations are sufficient to permit discovery into:

1. the number, nature, and timing of the complaints;
2. whether the complaints involved substantially similar race-based treatment;
3. the identities and authority of the District officials who received the complaints;
4. the contents and distribution of the Costello–Rivalcava report;
5. the District's classification of complaints as substantiated or unsubstantiated;
6. the corrective measures, if any, taken by the District; and
7. whether the challenged conduct extended to other EISD athletic programs.

Plaintiff also alleges a causal connection between EISD's failure to correct the known practices and the discrimination experienced by Plaintiff. See *Piotrowski*, 237 F.3d at 580 (requiring an official policy or custom, policymaker knowledge, and a constitutional violation whose moving force is the policy or custom).

While Costello denied all allegations and the witness did not substantiate the items, the formidable allegations still remain subject to fact finding. Defendant Rivalcava made the following admissions and was sanctioned.

1.Admitted using profanity toward players.

o Admitted cursing at a player during a game.

o Admitted his conduct was unacceptable and not a reflection of the school or

district.

2. Admitted sending the team the text message:

o "WAB fuck them all."

o Claimed it was motivation and team unity.

3. Admitted receiving technical fouls and being ejected.

o Acknowledged two technical fouls and an ejection at the Hanks tournament.

4. Admitted physically grabbing players.

o Stated he grabs players by the arm or shirt and moves them on the court.

o Admitted putting his hands on players.

5. Admitted yelling at players.

o Claimed players were "disrespectful and defiant" as justification.

Official EPISD Findings Against Ruvalcava

1. EPISD substantiated inappropriate profanity and communication by Ruvalcava.

o Investigation specifically found those allegations substantiated.

2. EPISD substantiated bullying/negative treatment allegations against Ruvalcava.

o Report states allegations involving telling players they were not good enough, creating a negative environment, and treatment affecting students emotionally were substantiated.

3. EPISD disciplined Ruvalcava.

o Public reprimand.

o One-year UIL probation.

o Two-game suspension.

o Required coaching courses.

The Board of Trustees met December 19, 2023 regarding the families complaints and took no action, showing their conscious indifference to outrageous actions of the coaches and cover up for Coach Costello. Dkt. p. 6, para.31.

Defendants may dispute whether Cervantes possessed final policymaking authority. That issue turns on Texas law and the allocation or delegation of authority within EISD. See *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989); *Bolton v. City of Dallas*, 541 F.3d 545, 548–49 (5th Cir. 2008). Plaintiff alleges, at a minimum, that Cervantes possessed corrective authority, participated in the review of widespread complaints, and communicated with officials responsible for District policy. Those allegations, together with the alleged report and the District's response, plausibly support Plaintiff's policy, custom, deliberate-indifference, or ratification theories at this stage.

The motion to dismiss the § 1983 claim against EISD should therefore be denied.

**IV. Count II Plausibly Alleges an Equal Protection Violation Against Coach Costello**

The Equal Protection Clause prohibits a public official from intentionally treating a person differently because of race. *Washington v. Davis*, 426 U.S. 229, 239–42 (1976); *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). Racial classifications imposed by government actors are subject to strict scrutiny. *Johnson v. California*, 543 U.S. 499, 505–06 (2005).

Plaintiff alleges that Coach Costello intentionally provided benefits and opportunities to students of one race or skin color while denying comparable benefits and opportunities to Plaintiff. The alleged differential treatment included:

1. offering selected students transportation home and to practices;
2. including selected students in team group messages containing practice and scheduling information;
3. excluding Plaintiff from those communications, thereby causing or contributing to missed practices;
4. denying Plaintiff opportunities afforded to similarly situated players; and

5. using Plaintiff's resulting absences or exclusion as a basis for adverse treatment or removal from the team.

Dkt. 17 at pp. 4-6, ¶¶ 17-25.

These are concrete factual allegations, not merely legal conclusions. Taken as true, they permit the reasonable inference that Costello intentionally denied Plaintiff equal access to team information, transportation, participation, and benefits because of race or color. The Equal Protection claim is therefore plausible under Rule 12(b)(6).

**V. Qualified Immunity Does Not Support Dismissal at the Pleading Stage**

Qualified immunity protects officials only when their conduct does not violate a clearly established constitutional right of which a reasonable official would have known. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). It does not protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); see also *Anderson v. Valdez*, 845 F.3d 580, 599–600 (5th Cir. 2016).

The right of a public-school student to be free from intentional racial discrimination by school officials was clearly established well before the events alleged here. See *Brown v. Board of Education*, 347 U.S. 483, 493–95 (1954); *United States v. Fordice*, 505 U.S. 717, 732–33 (1992). No reasonable public-school coach could believe that intentionally providing team information, transportation, or participation opportunities based on race, while deliberately excluding a student of another race, was constitutionally permissible.

Plaintiff alleges that Costello's conduct was deliberate, repeated, and directed at denying Plaintiff equal participation in the basketball program. Accepting those allegations as true, Costello's conduct was objectively unreasonable in light of clearly established equal-protection principles. See *Anderson*, 845 F.3d at 600.

Qualified immunity therefore does not warrant dismissal before the factual record is developed.

## VI. Count V Plausibly Alleges Unlawful Retaliation

Plaintiff alleges that, after Plaintiff and Plaintiff's family complained about race discrimination, Coach Costello escalated the adverse treatment. The alleged escalation included exclusion from communications, denial of transportation or practice information, reduced participation, disciplinary action, and ultimately Plaintiff's removal from the team. Dkt. 17 at pp.4-6 ¶¶ 17-25.

Section 1983 supplies a remedy for retaliation only when the retaliation infringes a right secured by the Constitution or federal law; § 1983 does not independently create substantive rights. See *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff's claim is based on retaliation for opposing governmental race discrimination and for engaging in constitutionally protected speech or petitioning activity.

To state a First Amendment retaliation claim, a plaintiff must allege protected activity, an adverse action that would deter a person of ordinary firmness from continuing that activity, and a causal connection between the protected activity and the adverse action. See *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Close timing, escalating treatment, and statements or conduct evidencing retaliatory intent may support an inference of causation at the pleading stage. See *Mooney v. Lafayette County School District*, 538 F. App'x 447, 454–55 (5th Cir. 2013).

Plaintiff alleges that:

1. Plaintiff and Plaintiff's family complained to EISD officials about race discrimination;
2. Costello knew about those complaints;
3. Costello's adverse conduct began or escalated after the complaints;
4. the conduct culminated in Plaintiff's removal from the team; and
5. the stated reasons for the removal were connected to absences or circumstances Costello allegedly created by excluding Plaintiff from team communications and opportunities.

These allegations plausibly establish protected activity, materially adverse action, and causation. The escalating conduct and temporal relationship between the complaints and Plaintiff's removal support a reasonable inference of retaliatory intent. Whether Costello acted for a legitimate reason or in retaliation presents a factual question that cannot properly be resolved under Rule 12(b)(6).

**VII. Alternative Request for Leave to Amend**

If the Court determines that any claim requires additional factual detail—particularly concerning the date and title of the investigative report, the similarity of the 26 complaints, the identity of EISD's final policymaker, or the constitutional basis for Count V—Plaintiff requests leave to amend. Rule 15 directs courts to give leave freely when justice so requires. Fed. R. Civ. P. 15(a)(2); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

**VIII. Prayer**

For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss. Alternatively, Plaintiff requests leave to amend any claim the Court finds insufficiently pleaded and all other relief to which Plaintiff is entitled.

Respectfully Submitted,
/s/ Renee Walker
Renee Walker, Esquire
LLG National Law Group
3003 North Central Ave. Ste 685
Phoenix, AZ 85012
(P) 888-826-6580
Renee.walker@llgnational.com

Certificate of Service

Plaintiffs served this Opposition to Defendants' Motion to dismiss on August 31, 2026 to all parties of record by efiling.

Respectfully Submitted,

/s/ Renee Walker
Renee Walker, Esquire
LLG National Law Group
3003 North Central Ave. Ste 685
Phoenix, AZ 85012
(P) 888-826-6580
Renee.walker@llgnational.com